ROBERTSON, Justice,
for the Court:
I.
This appeal presents the question whether, under what circumstances, and to what extent the findings of fact of one administrative agency may be binding in subsequent proceedings before another agency when arguably similar fact questions are presented.
The Board of Trustees of the Philadelphia Municipal Separate School District, Appel-lee here (sometimes “PMSSD”), following a hearing held under the School Employment Procedures Law of 1977, Miss.Code Ann. §§ 37-9-101, et seq. (Supp.1982), determined that Bobby Edsel Winstead should not be reemployed as a math teacher for the 1980-81 school year. The Board found good cause for Winstead’s non-reemplyment. We are concerned with the effect, if any, of that good cause determination in a subsequent unemployment compensation benefits reimbursement proceeding before the Mississippi Employment Security Commission (“MESC”) where the “issue is reason for claimant’s separation from work”.
The Mississippi Employment Security Commission Board of Review affirmed an Appeals Referee’s decision that nothing done at the prior non-reemployment proceeding before the Board of Trustees of PMSSD was binding before MESC. The Board of Review ordered the PMSSD reimburse the Employment Security Trust Fund to the extent benefits had been paid to Winstead. On appeal, however, the Circuit Court of Neshoba County reversed. In so doing, the Circuit Court relied heavily upon the prior teacher non-reemployment proceedings before PMSSD which by that time had resulted in an affirmance in the Chancery Court of Neshoba County, Mississippi.
Arguing that the Circuit Court of Nesho-ba County has committed serious error in its understanding of the limited scope of review before it, the Mississippi Employment Security Commission appeals to this Court. We reverse.
II.
Unemployment insurance claimant Bobby Edsel Winstead had been employed as a mathematics teacher by the Philadelphia Municipal Separate School District in Nesh-oba County, Mississippi, for approximately nine years. As is customary in this state, each year he taught under a one year contract. His last contract with the district was for the 1979-80 school year. Win- *391 stead’s last day of employment was at the end of that school year on May 23, 1980. He was not offered a contract to teach for the 1980-81 school year.
In early March of 1980, Winstead was advised by his principal that he would not be offered reemployment.[1] Assigned as reasons were Winstead’s alleged
*392 (1) lack of respect for students,
(2) antagonistic and uncooperative attitude toward school administration,
(3) violation of rules and regulations prescribed for the conduct and operation of school,
(4) exhibition of unprofessional conduct, and
(5) incompetence.
Despite these serious charges, Winstead was allowed to complete his then existing contract and teach for the remainder of the 1979-80 school year.
Winstead protested his non-reemployment first through a hearing held by the Board of Trustees of the Philadelphia Municipal Separate School District under the School Employment Procedure Law of 1977 (Miss.Code Ann. §§ 37-9-101, et seq.) (Supp.1982) and subsequently on appeal to the Chancery Court of Neshoba County, Mississippi. Pending those proceedings, and following his last day of work on May 23, 1980, Winstead filed a claim with the Mississippi Employment Security Commission seeking unemployment compensation benefits. This claim indicated that Win-stead was separated from his employment because of “lack of work”. MESC determined that Winstead was indeed eligible for benefits and his claim was allowed.
In due course, on June 23, 1980, MESC notified PMSSD that the claim had been allowed and that PMSSD was liable for any benefits paid to the claimant as required by law.[2] An MESC Appeals Referee and the MESC Board of Review affirmed, only to be reversed by the Circuit Court which relied substantially on the Chancery Court’s decision in the teacher non-reemployment proceedings.
III.
A.
We first address the collateral estoppel question necessarily at the heart of the Circuit Court’s ruling. Our precise context is this: The fact question of why Winstead was not reemployed was originally “litigated” before the Board of Trustees of the Philadelphia Municipal Separate School District. That Board, acting as an administrative agency,[3] held a non-renewal[4] hearing
*393 pursuant to the provisions of Sections 37-9-101, et seq. Miss.Code Ann. (Supp.1982).
On May 25, 1980, the Board of Trustees released specific and detailed findings of *394 fact. Suffice it to say that the Board found that Winstead was incompetent and unfit and that good cause existed for his non-reemployment with the Philadelphia Municipal Separate School District.
These findings of fact were immediately challenged in statutorily authorized appeal proceedings before the Chancery Court of Neshoba County, Mississippi, in Case No. 11,932. Exercising a very limited power of review, the Chancery Court on April 21, 1981, affirmed. Tracking the statute,[5] the Chancery Court held that the decision of the Board of Trustees, necessarily including the findings of fact made in connection therewith, (a) was supported by substantial evidence, (b) was not arbitrary or capricious, and (c) was not in violation of any statutory or constitutional right of Win-stead. The Chancery Court rendered its decision fully effective via a final decree entered November 4, 1981. No further appeal was taken.
At the hearing before the MESC Appeals Referee held September 2, 1980, PMSSD offered into evidence the entire decision of its Board of Trustees rendered May 25, 1980. This decision contains findings of evidentiary facts as well as findings of ultimate facts. The latter amount to little more than a recitation of the original reasons for non-reemployment given by the principal back in March of 1980.
In making his decision, the MESC Appeals Referee correctly considered as dispos-itive the question of whether Winstead was discharged for “misconduct” connected with his work. Miss.Code Ann. § 71-5-513(2) (1972). The Appeals Referee’s decision of September 8, 1980, includes the following definition of “misconduct”:
The term “misconduct”, as used in the Mississippi Employment Security Law, may be defined as an act of wanton or willful disregard of the employer’s rules, a disregard of the standard of behavior which the employer has the right to expect of an employee, or negligence indicating an intentional disregard of the employer’s interests or of the employee’s duties and obligations to the employer.[6]
The Appeals Referee then considered all of the evidence before him, including the PMSSD decision referred to above, and held:
The weight of the evidence as presented does not support a finding that Claimant [Winstead] was discharged for misconduct connected with his work.
On October 20, 1980, the MESC Board of Review affirmed. There followed the appeal to the Circuit Court of Neshoba County, which on July 22, 1982, reversed. It is from that final judgment of reversal that this appeal has been taken.
B.
In rendering the final judgment in the case now before this Court on direct appeal, the Circuit Judge expressly recited that he had reviewed the record in the proceedings before the Chancery Court. He further stated that he had “carefully considered the sworn testimony produced in the trial of the *395 matter in the Chancery Court”. On the basis of this review, and in spite of his statutorily narrow powers of review, the Circuit Judge vacated the order of the Board of Review of the Mississippi Employment Security Commission. He must have had in mind the doctrine of collateral estop-pel, though it is not mentioned in his ruling. For we can fathom no ether theory under which that occurring in the teacher non-reemployment proceedings may be said, in and of itself to require reversal of the decision of MESC Board of Review.[7]
In the present context, a correct collateral estoppel analysis requires that we take the findings of fact of the Board of Trustees of the Philadelphia Municipal Separate School District, as affirmed by the Chancery Court, and ask the question whether the instant MESC compensation reimbursement proceedings constitute an attempt to relitigate those same fact issues. Or, to put the matter another way, by reason of the proceedings before the Board of Trustees of PMSSD and the findings of fact made thereat, what facts were left open for litigation m these unemployment compensation reimbursement proceedings before the Mississippi Employment Security Commission, under the doctrine of collateral estop-pel?
C.
The rule of collateral estoppel has well established contours in this state. It was stated succinctly by Judge Ethridge in Garraway v. Retail Credit Company, 244 Miss. 376, 141 So.2d 727 (1962) as follows;
. .. [WJhere a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment, that determination is conclusive between the same parties in a subsequent suit on a different cause of action. 244 Miss, at 385,141 So.2d at 730. [Emphasis added].
See also, Johnson v. Bagby, 252 Miss. 125, 133-136, 171 So.2d 327, 330-331 (1965); Magee v. Griffin, 345 So.2d 1027, 1032 (Miss.1977); and Dunaway v. W.H. Hopper & Assoc., Inc., 422 So.2d 749, 751 (Miss.1982).
*396 The doctrine of collateral estoppel has been recently characterized as a rule of evidence in Sanders v. State, 429 So.2d 245, 251 (Miss.1983):
In civil cases collateral estoppel functions as though it were a rule of evidence. It stipulates how certain facts may be established by trial. Where an issue of fact is actually litigated and resolved in one trial and where that fact was essential to the judgment in the first trial, that fact is taken as established in subsequent trials involving the same parties. The fact thus need not be—and cannot be—reliti-gated in the second trial. The party in whose favor such fact was resolved in the first trial is said to enter the second trial with that fact established in his favor. 429 So.2d at 251. [Emphasis added].
The doctrine of collateral estoppel serves a dual purpose. It protects litigants from the burden of relitigating an identical issue with the same party or his privy. It promotes judicial economy by preventing needless relitigation. These considerations and needs seem equally present when the litigation begins before administrative agencies as when it is conducted exclusively in the courts.
This Court has recognized heretofore that the doctrine of collateral estoppel may have application in the field of administrative law. In City of Jackson v. Holliday, 246 Miss. 412, 149 So.2d 525 (1963), the Court, again speaking through Justice Eth-ridge, said:
The common law doctrine of res judicata, including the subsidiary one of collateral estoppel, is designated to prevent relitigation by the same parties of the same claims or issues. The reasons behind the doctrine, as developed in the courts, are
Furthermore, collateral estoppel precludes the litigation of only those issues necessary to support the judgment entered in the first action. As the Virginia Supreme Court stated in Petrus v. Robbins, 196 Va. 322, 330, 83 S.E.2d 408, 412 (1954), “[t]o render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined,—that is, that the verdict could not have been rendered without deciding the matter”. - U.S. at -, 103 S.Ct. at 2374, 76 L.Ed.2d at 605. [Emphasis added], fully applicable to some administrative proceedings, particularly applicable to some, and not at all applicable to others. The doctrine is best applied to an adjudication of past facts. [Citations omitted] 246 Miss, at 419, 149 So.2d at 527. [Emphasis added].
We hold that the doctrine of collateral estoppel is fully applicable in cases such as this. It appears to us that the fact questions litigated and decided before the Board of Trustees of PMSSD and those litigated and decided before MESC are the same. Beyond that, however, we hold that those fact findings were not “essential to the judgment”[8] in the PMSSD teacher non-reemployment proceedings. Accordingly, under a faithful application of the doctrine of collateral estoppel to the facts of this case, litigation before MESC of the reasons for Winstead’s non-reemployment was not precluded.
The fact inquiries necessarily before the school board, on the one hand, and MESC, on the other hand, are as, a matter of law, different. In school teacher non-reemployment proceedings, good cause is essentially an irrelevant concept.[9] The school administration is not required to demonstrate good cause for its decision that a particular school teacher will not be reemployed. Calhoun County Board of Education v. Hamblin, 360 So.2d 1236, 1239-1240 (Miss.1978). On the other hand, good cause amounting to willful misconduct is required before an employee may be disqualified for unemployment compensation benefits. See Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982), and footnote 6, supra.
To be sure, the Board of Trustees of PMSSD went ahead and decided that Win- *397 stead had been non-reemployed for good cause. As a matter of law, such was not necessary. In non-reemployment proceedings, as distinguished from discharge proceedings, there is no requirement in our law that the school administration establish good cause in order to sustain a decision not to reemploy. See, e.g., Calhoun County Board of Education v. Hamblin, supra; Lamar County School Board v. Saul, 359 So.2d 350, 353-354 (Miss.1978); Tanner v. Hazlehurst Municipal Separate School District, 427 So.2d 977, 979-980 (Miss.1983); and see particularly Miss.Code Ann. § 37-9-101 (Supp.1982).
Under our law, the school administration may refuse to rehire a teacher for good reason, for bad reason, or for no reason at all. The administration simply may not base its decision not to rehire upon legally impermissible considerations. Calhoun County Board of Education v. Hamblin, 360 So.2d 1236, 1239 (Miss.1978). Absent a violation of some vested substantive or procedural right, a non-rehire decision is beyond judicial review.
Here the Board of Trustees of PMSSD went much further than it had to. It made findings of facts which arguably amount to willful misconduct. The reasons why these findings may not be held to preclude reliti-gation before MESC are, we think, obvious.
In the first place, the school board will always be tempted, out of its own self-interest and in anticipation of unemployment compensation reimbursement proceedings, to tailor its findings of fact so as to preclude MESC’s access to the school district’s treasury for reimbursement of the Employment Security Trust Fund.
Second, and more fundamental, the doctrine of collateral estoppel must never be seen as anything other than an unusual exception to the general rule that all fact questions should be litigated fully in each case. The several predicates to application of the preclusive effect of the doctrine, as set forth in the Garra way case and others cited above, are designed to promote substantial judicial and litigant interests. They are also designed to assure substantial reliability in the facts found in the first proceedings. Where there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied. See Garraway v. Retail Credit Company, 244 Miss. 376, 386, 141 So.2d 727, 730 (1962); see also, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330-331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552, 561-562 (1979).
It is thought quite sensibly that the first tribunal will be extremely careful in deciding fact questions which are essential to its judgment. The same degree of judicial or administrative care, however, may from time to time be lacking when fact questions are inquired into where they are not necessary to the decision. Accordingly, it is one of the firmly established predicates for application of collateral estoppel that the findings of fact in the first case were essential to the judgment.[10]
In the context of the well established law of this state regarding teacher non-reemployment proceedings, the non-reemployment decision of the Board of Trustees of PMSSD could easily have been rendered— and rendered beyond disturbance on appeal — without deciding that Winstead had been guilty of misconduct. Moreover, we hold that there is no fact, which under applicable law would be sufficient to disqualify Winstead for unemployment compensation benefits, the finding of which was necessary to the sustaining of the school district’s decision not to reemploy. Under these circumstances, no findings of evidentiary or ultimate fact made by *398 PMSSD, even though left undisturbed on appeal to the Chancery Court, may be given collateral estoppel effect in proceedings before the Mississippi Employment Security Commission.[11]
This is not to say that the proceedings before the school board are wholly irrelevant. The findings of fact made by the school board were received by the Appeals Referee and considered as evidence, though not preclusive evidence. This course of proceeding was correct. Though not in any sense binding, the Appeals Referee and subsequently the Board of Review of MESC may consider any such evidence for what it may be worth.[12] In this instance, of course, the decision of the Board of Trustees of PMSSD was found by the MESC Appeals Referee and subsequently the Board of Review not to be of sufficient probative value to deny the claim for benefits.
IV.
Having held that the Circuit Court erroneously gave preclusive effect to the prior teacher non-reemployment proceedings, we turn now to the question of what judgment should have been entered by the Circuit Court. Although we reverse, we do not here conclude that the order of the Board of Review should be reinstated. That order, too, is infected with error.
The basis of the MESC Board of Review’s decision is not entirely clear. A major pillar, however, seems to be the notion that, within the meaning of the Mississippi Employment Security Law, “discharge” and “non-reemployment” are generically different. In its opinion the Board of Review states:
The claimant [Winstead] did not voluntarily leave work and was not discharged from his employment, within the meaning of the law. He became unemployed because his contract of employment with the employer [PMSSD] expired and no further offer of work was made to him. It cannot be held, therefore, that he was discharged for misconduct connected with his work, and disqualification for benefits is not in order.
MESC’s Board of Review seems to be saying that it affirms the Appeals Referee because non-reemployment is not the equivalent of discharge. If we understand it correctly, the Board of Review has interpreted the law to provide that, where a school teacher has been non-reemployed for cause, the employee (if he otherwise qualifies) is nevertheless eligible for benefits and the employer is liable for reimbursement. This interpretation of the Mississippi Employment Security Law is clearly erroneous.[13]
*399 We are concerned with the proper interpretations of the term “discharged” found in Miss.Code Ann. § 71-5-513 (Supp.1982). Black’s Law Dictionary, 4th ed., defines “discharge” as “to remove from employment”. An employee is as effectively removed from employment, whether he is fired or at the end of his contract term not rehired. We hold that a school teacher has been “discharged” within the meaning and contemplation of the Mississippi Employment Security Law whenever, within the meaning and contemplation of the Mississippi School Employment Procedures Law, he or she has been either fired or simply not reemployed. If the school district can demonstrate that the teacher’s non-reemployment was because of misconduct connected with his or her work, the teacher is ineligible for benefits and, of course, the school district may not be required to make any reimbursements to the Employment Security Trust Fund.
The MESC Board of Review’s interpretation is unnecessarily wooden. It effectively strips the school district of the option, surely rationally within its discretion, of putting up with teacher misconduct for a few more months to avoid the disruptive effects of a midyear firing.
If a teacher violates school policies in March, the time when new contracts are issued, it may make better sense for a school board not to renew the teacher’s contract for the following year, rather than firing him two months before school is out. A school board definitely has an interest in providing for the uninterrupted instruction of the students with whose education it has been charged. Firing teachers in the middle of the school year generally disrupts the learning process. Competent replacements or substitutes are not always readily available. Considering the effects of that disruption, a school board may in some cases justify retaining for the remainder of the school year a teacher who is guilty of even the most serious forms of misconduct. Yet, to say that the school board’s end-of-the-year non-reemployment of the teacher in such a case is not the functional equivalent of a discharge for work connected misconduct is to ignore reality.
School boards, of course, have the option of being reimbursing employers rather than contributing employers under the Mississippi Employment Security Law. Miss.Code Ann. § 71-5-357(b) (Supp.1982). If they elect to be reimbursing employers, they have to pay money into the Employment Security Trust Fund only when one of their previous employees is collecting unemployment compensation. Given this situation, the practical effect of MESC’s narrow construction of “discharge” will be to penalize school boards for allowing a teacher guilty of misconduct to continue teaching until the end of the school year. This is so when on balance it may be in everybody’s best interest that the teacher remain. If the MESC’s interpretation of “discharge” were allowed to stand, school boards will be put in the untenable position of having to choose between the best interests of its students and its budget when deciding whether a teacher should be discharged immediately or allowed to finish the school year.[14] And where they choose the discharge route, teachers will be deprived of valuable “advance notice” rights, Lamar County School Board v. Saul, 359 So.2d 350, 354 (Miss.1978), not to mention the permanent blot a firing would put on their work record.
Recognizing that the legislature always has the power to undo that which we do here in cases such as this, we hold that the MESC interpretation of discharge to exclude therefrom school teacher non-reemployment is clearly erroneous.
*400 V.
The judgment of the Circuit Court is reversed. By reason of what we have said above, we remand to the Circuit Court with directions that the order of the MESC Board of Review released October 20, 1980, be vacated.
The Circuit Court is then directed to remand the case to the Board of Review of the Mississippi Employment Security Commission, the administrative agency charged with primary responsibility in the premises for such further proceedings as it may deem appropriate, not inconsistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., and HAWKINS and PRATHER, JJ., concur.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE, J., specially concur.
BOWLING and DAN M. LEE, JJ., not participating.

. The following chronology of events may help to place in focus the not uncomplicated course of the separate but temporarily overlapping proceedings with which we are here concerned.
[[Image here]]
Date PMSSD MESC
March 12, 1980 Winstead notified by principal of
recommendation for non-reemployment.
May 5, 1980 Administrative hearing before Board of Trustees of PMSSD on question of whether Winstead would be offered reemployment for 1980-81 school year.
May 25, 1980 Decision of Board of Trustees of PMSSD that recommendation of non-reemployment of Winstead should be sustained.
Winstead files initial claim for benefits with Mississippi Employment Security Commission. June 11, 1980
Winstead files appeal in Chancery Court of Neshoba County from decision of Board of Trustees of PMSSD. June 17, 1980
July 23, 1980 MESC/UCD advises PMSSD that claim has been allowed and that PMSSD must make reimbursement to MESC as required by law.
September 2, 1980 Hearing before MESC Referee on PMSSD’s protest of demand for reimbursement.
September 8, 1980 Decision of L. H. James, Appeals Referee, released affirming MESC order that Winstead’s claim was properly allowed and that PMSSD must reimburse Employment Security Trust Fund as required by law.
October 20, 1980 MESC Board of Review releases decision affirming decision of Referee.
October 30, 1980 PMSSD perfects appeal from decision of MESC Board of Review by filing declaration and petition for appeal in the Circuit Court of Neshoba County, Mississippi.
April 21, 1981 Chancery Court of Neshoba County, Mississippi releases opinion affirming decision of Board of Trustees of PMSSD not to reemploy Winstead.
November 4, 1981 Chancery Court of Neshoba County, Mississippi, enters final decree in accordance with opinion of April 21, 1981, affirming non-reemployment decision.
*392 Proceedings Before Proceedings Before
Date PMSSD MESC
July 22, 1982 Circuit Court of Neshoba County Mississippi, reverses order of Board of Review of MESC dated October 20, 1980.

. The legal basis for PMSSD’s liability for reimbursement of the Employment Security Trust Fund may be found in Miss.Code Ann. § 71-5-357(b) (Supp.1982). See generally, Mississippi Employment Security Commission v. City of Columbus Light & Water Dept., 424 So.2d 553 (Miss. 1982); and McLaurin v. Mississippi Employment Security Commission, 435 So.2d 1170 (Miss.1983).

. The school board is by statute designated the administrative agency charged with the hearing and determination of teacher non-reemployment cases. Miss.Code Ann. § 37-9-101, et seq. Persuasive arguments may be mustered that this hearing responsibility should be vested elsewhere. From the teacher’s point of view, the school board is hardly likely to provide an impartial forum. In addition, the school board becomes a partisan litigant in any subsequent unemployment compensation reimbursement proceedings. No matter. The legislature of this state, acting well within its powers, has designated the school board to hear teacher non-reemployment cases. When acting in that capacity and under that statutory empowerment, the school board acts as an administrative agency.

.It must be kept clearly in mind, for purposes of our consideration of the collateral estoppel issue here, that we are concerned with a non-renewal proceeding, not a discharge proceeding. Winstead was not fired in mid-year. His contract was allowed to expire, and it was not renewed.
With regard to a teacher’s substantive right to employment, there is significant legal distinction between firing a teacher who is under contract and the non-reemployment of a teach *393 er whose contract has expired. In both cases, the procedures to be followed and the right to employment, if any, are governed by statutes.
If a teacher is under contract, the grounds for which he may be removed and the procedures to be followed are outlined in Miss.Code Ann. § 37-9-59 (Supp.1982), which provides in relevant part:
For incompetence, neglect of duty, immoral conduct, intemperence, brutal treatment of a pupil or other good cause the County Superintendent of Education, Superintendent of the Consolidated District, or Superintendent of the Municipal Separate School District, as the case may be, may remove or suspend any principal or teacher in any school district.
When the decision is made not to renew a teacher’s contract, grounds for nonrenewal and procedures to be followed are outlined in the School Employment Procedures Law Sections 37-9-101, et seq. (Supp.1982). In relevant part, this statute provides:
It is the intent of the legislature to establish procedures for providing public school employees notice of the reasons for not offering an employee a renewal of his contract, to provide an opportunity for the employee to present matters in extenuation or exculpation to enable the Board to determine whether the recommendation of non-reemployment is a proper employment decision and not contrary to law, and not to establish a system or tenure or require that all decisions of non-reemployment be based upon cause with respect to employment in the school district. Miss.Code Ann. § 37-9-101 (Supp.1982). When a teacher is fired under Miss.Code
Ann. § 37-9-59 or non-re-employed under the School Employment Procedures Law, the procedures which must be followed are, more or less, the same. In either case, the superintendent must give notice of the decision to dismiss and the reasons therefor or the decision not to renew a teacher’s contract; if the teacher requests, he is, in each case, entitled to a hearing before the school board. Miss.Code Ann. §§ 37-9-59, 37-9-105 through 37-9-111 (Supp.1982). Parties aggrieved by the school board’s decision, in either case, may appeal to the Chancery Court, but its powers of review are limited to a review of the record made before the school board to determine if the decision is unlawful because it was “(a) not supported by any substantial evidence; (b) arbitrary or capricious; or (c) in violation of some statutory or constitutional right of the employee.” Miss.Code Ann. § 37-9-113 (Supp.1982), see also Sec. 37-9-59 (Supp. 1982).
While the procedural safeguards offered by these two statutes are essentially the same, their substantive differences are well established in our case law. In Madison County Board of Education v. Miles, 252 Miss. 711, 173 So.2d 425 (1965), a school board attempted to fire a principal under contract on the ground that he “maliciously impugned the integrity of an employee”. The principal appealed the decision to the Chancery Court which found that the principal was acting well within his authority when he disciplined the employee and consequently reversed the school board on the grounds that its decision was arbitrary and capricious and not supported by substantial evidence. This Court affirmed the decision of the Chancellor, holding that a school teacher or a principal has a valuable right in a contract of employment duly approved by school authorities, and that the legislature, in enacting the statute, had intended to make school teachers and principals reasonably secure in their jobs. 252 Miss, at 716, 173 So.2d at 427. The Court found that in a hearing concerning a dismissal, the burden is on the superintendent to show that a principal or teacher has been dismissed for reasons enumerated in the statute. Miss. Code Ann. § 37-9-59 (Supp.1982).
In a nearly identical case involving a nonre-newal of a contract, as opposed to a dismissal, this Court reached the opposite result. In Calhoun County Board of Education v. Hamblin, 360 So.2d 1236 (Miss.1978), a school board refused to rehire a principal due to an alleged lack of communication with the staff and community. On appeal the Chancery Court reversed the school board, holding that its decision was not supported by substantial evidence and that it was arbitrary and capricious. This Court reversed, finding that:
The burden of proof at the hearing is not on the superintendent or the principal, as the case may be, as it would be in a tenure situation. Once the superintendent has given a demonstrable reason for non-reemployment (before the hearing), the burden at the hearing is upon the employee to prove affirmatively and conclusively that the reasons relied upon by the school board have no basis in fact.... Although the proof is inconclusive, it cannot be said that the reason was not demonstrable and not supported by fact. 360 So.2d at 1240.
The Court noted specifically that this statute did not create a system of tenure in Mississippi and that it was not intended to place restrictions on a school board’s decisions regarding whether or not a principal or teacher’s contract should be renewed. 360 So.2d at 1240. Thus, it is well established law in this state that a teacher under contract can only be dismissed for reasons enumerated in the applicable statute while the decision not to rehire a teacher can be made for any reason not specifically prohibited by law, so long as the procedural *394 requirements outlined in the School Employment Procedures Law are met.
In Section IV, infra, we coalesce firing and non-reemployment into the statutory term “discharge” as used in the Mississippi Employment Security Law. Nothing said here in Section III is in my way inconsistent with what we will say in Section IV. We here draw the distinction between firing and non-reemployment for the sole and only purpose of then identifying, for collateral estoppel purposes, those fact findings which were necessary to the PMSSD school board’s judgment that Winstead’s contract should not be renewed.

. See Miss.Code Ann. § 37-9-113(3) (Supp. 1982).

. We hold that the statutory term “misconduct” means that which has been quoted above. See Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). It is the official interpretation of the administrative agency charged with the administration of the Mississippi Employment Security Law. It is not clearly erroneous. See Mississippi Cottonseed Products Co. v. Stone, 184 Miss. 409, 422, 184 So. 428, 431-432 (1938). Statutory constructions made by administrative agencies in charge of administering a particular statutory are given great weight and deference by this Court. See, e.g., State Tax Commission v. Edmondson, 196 So.2d 873, 877 (Miss.1967).

. The precise use the Circuit Judge made of the PMSSD Board of Trustees’ findings is not clear to us. In its brief, MESC charges that the Circuit Judge in effect heard the case de novo and considered the Chancery Court proceedings as evidence at such hearing. If this is what the Circuit Judge did, he was clearly in error on two grounds. First, the Circuit Judge exceeded the very limited scope of review provided by statute to-wit:
In any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive; and the jurisdiction of the court shall be limited to questions of law. Miss.Code Ann. § 71-5-531 (1972).
Second, if he did indeed hear the case de novo, i.e., on the basis of any evidence other than that before the MESC Board of Review, the Circuit Judge exceeded his constitutional powers. Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664, 665 (Miss. 1969) establishes that the judiciary of this state does not have the constitutional power to retry de novo matters on appeal from administrative agencies. See also Board of Trustees of Pass Christian Municipal Separate School District v. Acker, 326 So.2d 799, 801 (Miss.1976).
Having in mind both statutory and constitutional limitations on the Circuit Judge’s powers of review, there are two contexts in which he may — indeed, ought — have considered the PMSSD findings of fact. First, those findings of fact were a part of the evidentiary record before the MESC Board of Review. In reviewing the entire record before the Board of Review to determine whether its findings are supported by substantial evidence, the PMSSD findings of fact will necessarily be a part of that reviewed. Second, the Board of Review would have been bound by the PMSSD findings of fact if the requisites for application of collateral estoppel be found. As indicated below, the doctrine generally is available in administrative proceedings. At least one, and possibly more, of the requisites to enforcement of the doctrine are here missing.
The Circuit Judge, however, seemed to give more consideration to the Chancery Court’s decision, rather than to the underlying findings of fact made by PMSSD. In doing this he erred. Had the Chancery Court reversed the PMSSD, the vitality of those underlying findings of fact would have been undermined. Since the Chancery Court affirmed, the Circuit Judge was precluded from giving its decision any consideration. The decision of the Chancery Court was not a part of the evidence received and the record made before the MESC Board of Review. That evidence and record are what — and all — the Circuit Judge had power to consider.

. In Haring v. Prosise, - U.S. -, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), the Supreme Court of the United States, explaining the “essential to the judgment” requirement under Virginia law (which is the same as in our law), stated:

. See footnote 4, supra.

. Because we hold that the findings of fact made in the teacher non-reemployment proceedings were not essential to the judgment, we do not reach other questions arising under the collateral estoppel issue in this case. These possible questions include whether the mutuality requirement has been met, i.e., at least on appeal we find that the party sought to be estopped, MESC, was not a party to the teacher non-reemployment proceedings. We likewise indicate no opinion on whether MESC may be said to be in privity with one or more of the parties to the prior proceedings.

.The result we reach here is not dissimilar from that reached in a recent Florida case. Marion County School Board v. Clark, 378 So.2d 831 (Fla.App.1979) held that findings of fact made by a school board in dismissal proceedings are not binding on the unemployment commission. There a woman was discharged from her job as teacher on the grounds that she had violated school policies by corporally punishing a student. After her discharge, the teacher applied for unemployment compensation benefits. At the unemployment compensation hearing, the only evidence submitted by the school board consisted of several items of correspondence between the parties and the order by the school board dismissing the teacher. The unemployment appeals commission found that the alleged punishment was in fact an inadvertent collision and that the teacher had not been dismissed for misconduct connected with her work. The Florida Court of Appeals affirmed the decision by the appeals commission, holding that the commission was not bound by any findings or conclusions reached by the school board because in this context the school board is an adversary party. 378 So.2d at 834. While one judge felt that collateral estoppel should have been applied if it had been alleged, he failed to mention whether or not the factual issues before both boards were in fact the same.

. See footnote 7, supra.

. We hold here that the MESC interpretation of “discharge” in the statute is clearly erroneous as a matter of law. Because it is so it is our duty to strike it down. See Mississippi Cottonseed Products Co. v. Stone, 184 Miss. 409, 422, 184 So. 428, 431-432 (1938). Note the contrast with our discussion above in which we uphold MESC’s interpretation of “misconduct” because we cannot say that it amounts to a clearly erroneous reading of the statute.

. In a very real sense the MESC interpretation of discharge is contrary to the legislatively declared public policy of this state. The Mississippi Employment Security Law has been enacted “for the benefit of persons unemployed through no fault of their own”. Miss.Code Ann. § 71-5-3 (1972). MESC, however, has read “discharge” so as to allow benefits to persons unemployed (non-reemployed, to be precise) because of their own misconduct or fault. MESC, as much as this Court, is bound by the public policy of the law as enacted by the legislature.