# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 98-CC-00164-COA

**NOVELLA BUCK AND MELDA ROBINSON**                                **APPELLANTS**

**v.**

**LOWNDES COUNTY SCHOOL DISTRICT**                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/1998 |
| TRIAL JUDGE: | HON. WOODROW WILSON BRAND |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | CHESTER D. NICHOLSON |
| ATTORNEY FOR APPELLEE: | JEFFREY CARTER SMITH |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED THE NON-RENEWAL DECISION OF THE BOARD OF EDUCATION |
| DISPOSITION: | REVERSED AND REMANDED - 5/4/99 |
| MOTION FOR REHEARING FILED: | 5/18/99; Denied 08/24/99 |
| CERTIORARI FILED: | 09/07/99; Granted 11/18/99 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.

McMILLIN, C.J., FOR THE COURT:

¶1. Novella Buck and Melda Robinson, two long-time employees of the Lowndes County School District have appealed the decision of the Chancery Court of Lowndes County affirming the Lowndes County Board of Education's decision not to renew their employment contracts for the school year 1996 to 1997. They raise a number of issues on appeal, including a claim that the decision of the Board offered for nonrenewal has been effectively disproved, thereby making the Board's decision arbitrary and capricious as not being based on substantial evidence. We find this issue to have merit and reverse and remand for further proceedings consistent with this opinion. The result of our decision is to render the remaining issues raised in the appeal moot.

**I.**

## Facts

¶2. Buck and Robinson were both employed as teachers at West Lowndes Elementary School. In October 1995, Buck was in charge of administering a standardized test known as the Iowa Test of Basic Skills to her fourth grade class. Robinson served as Buck's classroom proctor during the administration of the test.

¶3. In March 1996, the school system received a letter from the Mississippi Department of Education regarding possible irregularities in the test answers provided by the students in Buck's class. The letter asked the school system to respond to the following finding:

> Results from the Performance Assessment in grade four (4) at West Lowndes Elementary School in Buck's classroom reveal that many identical answers for thirteen (13) items were provided by the entire class. This indicates possible copying of answers or possible coaching or interference with responses.

¶4. The school system's response to the Department of Education included affidavits from Buck and Robinson denying any improper activity in the administration of the tests. By subsequent letter dated March 29, 1996, the Department notified the school system that, based on the available information including a review of the school system's response, the Department had concluded that the school system had "failed to comply with testing regulations established to maintain the integrity of data in the Mississippi Assessment System." Specifically, the Department found that the school system had violated Department policy against "[c]oaching students during testing or altering or interfering with their responses in any way." The letter, though not entirely clear, seems to say that the finding of improper coaching was based entirely on "[e]vidence that individual students have similar or identical patterns of responses on their tests."

¶5. Three days after the date of the second correspondence, the Board met to consider renewal of teaching contracts for the coming year. Though both Buck and Robinson had been recommended for renewal by the superintendent, the Board, by a vote of four to one, decided not to renew the contracts of these two teachers.

¶6. Both Buck and Robinson received the statutory notice of non-renewal and both requested a hearing on the issue as permitted by law. As required by the statute, the Board, in advance of the hearing, furnished Buck and Robinson, in writing, the reasons why they were not being offered renewal contracts. The letter, addressed to the attorney representing both teachers, stated two reasons for nonrenewal, which we quote verbatim:

> 1. Testing irregularities brought to the District's attention by the Mississippi Department of Education on March 5, 1996; and confirmed on March 29, 1996, *wherein said teachers assisted, coached, and interfered with responses and answers* on the ITBS tests in October, 1995 at West Lowndes Elementary School; specifically Novella Buck's fourth grade class. (Emphasis supplied).

> 2. Violation of Mississippi Code Section 37-16-4 of the Mississippi Code of 1972, as amended.

¶7. At the hearing, Buck and Robinson relied on their previously-filed affidavits denying any such improper assistance or coaching of the students. The Board introduced the correspondence from the Department of Education and appeared to rely primarily on testimony from Billy Holley, an investigator from the District Attorney's office who had been assigned to investigate the matter of the testing irregularities. His testimony at the hearing consisted principally of recounting that he had interviewed a substantial number of the

students in the class and some had reported to him activities that would appear to constitute improper assistance to the students. However, none of the students were called as witnesses.

¶8. The actual testing materials were not available at the hearing because the proprietor of the tests had obtained a protective order from the Hinds County Chancery Court adjudicating the testing materials, including the students' answers, to be exempt from disclosure under the Public Records Act as being proprietary in nature and containing trade secrets of the private company that devised the tests.

¶9. After the hearing had been finally adjourned, it appears that someone associated with either the District Attorney's office or the school system became concerned regarding the state of the evidence in support of the decision to nonrenew these two teachers. As a result, an effort was made, without notice to counsel for the teachers, to obtain some relief from the Hinds County protective order. As a result of those efforts, a subsequent order was entered by the Hinds County chancellor that permitted the District Attorney's office to have access to the testing materials under certain limitations, which included signing a confidentiality agreement and agreeing not to obtain photocopies of the documents. Pursuant to this order, Investigator Holley performed an *ex parte* visual inspection of the test material, including the students' answer sheets.

¶10. The order permitting this limited right of inspection to the District Attorney's office was entered on June 26, 1996. On July 1, 1996, the Board filed a motion to reopen the hearing to permit Investigator Holley to testify "as to the test booklets and test results he reviewed, and give his personal observation of same." Over strenuous objection from Buck and Robinson, the hearing officer reopened the hearing and Holley was permitted to testify concerning what he observed in the course of his inspection of these test documents. His testimony consisted entirely of a recitation that he had looked at the test answers listed in previous correspondence from the Department of Education. He then made certain observations concerning the answers in the field of "language arts," which we quote verbatim:

> They were all almost identical. I mean, the tests, the wording of the answers were the same. The same words were misspelled. On some of the, it has reference in here to, I note, it is so obvious that there were two pages in the back of the, on their blank pages where they were suppose to answer a problem or give a statement as to what it was. It was one question. They wrote one answer on one page and then they turned the page over and wrote the other answer on the other one. Now, the ones that didn't do that were erased and either the answer changed or it was then placed on the back.

¶11. After that answer, Holley was asked, "What, if any, impression did you draw after you reviewed all 12 or 13 of the questions from the children's test booklets . . . ?" His response was, "They had been coached or told the answers." At that point, the Board's attorney concluded his examination of Holley, and, after a brief cross-examination the reopened hearing was finally concluded.

¶12. The Board declined to alter its previous decision on nonrenewal at the conclusion of the hearing and, as we have observed, the teachers' appeal to the chancery court was unsuccessful. The matter has now reached this Court.

## II.

### Discussion

¶13. This case is governed by the provisions of the Mississippi Code known collectively as "the School Employment Procedures Law of 1977," codified as sections 37-9-101 through 37-9-113 of the Code. For

purposes of clarity we will, on occasion, refer to this enactment as "the Law." The Law, on its face, presents some difficulty in determining what protections are afforded a teacher who is not offered a renewal contract for the coming school year. Although teachers are employed under contracts that run for only one school year, the Law provides some measure of protection to teachers. It requires those teachers whose contracts are not to be renewed to receive notification of nonrenewal no later than April 8 preceding the beginning of the school year. Miss. Code Ann. § 37-9-105(c) (Supp. 1998). The purpose of this notification is to permit such teachers ample time to pursue other employment opportunities and the law is clear that, if the employing school system fails to give timely notice, the affected teacher's contract is deemed to have been automatically renewed. *Noxubee County Sch. Bd. v. Cannon,* 485 So. 2d 302, 304 (Miss. 1986).

¶14. The Law affords further protections beyond simple notice, however. A teacher who is notified of nonrenewal is entitled, on proper demand, to receive written notice of the reasons for nonrenewal along with a summary of the factual basis supporting the reasons. Miss. Code Ann. § 37-9-109(a) (Rev. 1996). The teacher may also demand a hearing at which the teacher may "present matters relevant to the reasons given for the nonreemployment decision . . . ." Miss. Code Ann. § 37-9-109(b) (Rev. 1996). The Law permits a teacher who is unhappy with the result of the hearing process to obtain judicial review of the decision. Miss. Code Ann. § 37-9-113 (Rev. 1996).

¶15. It is in determining the purpose of this hearing before the Board and any resulting appeal that difficulties of analysis begin to arise. The Legislature declared its intent in the opening section of the Law. That passage included a statement that the Law was not intended "to establish a system of tenure or require that all decisions of nonreemployment be based upon cause . . . ." Miss. Code Ann. § 37-9-101 (Rev. 1996). Early decisions focused on this aspect of the Law and used language that invoked considerations of the employment-at-will doctrine. In *Tanner v. Hazlehurst Municipal Separate School District,* the Mississippi Supreme Court considered a case of nonrenewal of a teacher and discussed, with apparent approval, a United States Supreme Court case that had "noted that a nontenured teacher could be dismissed by a school board for no reason whatever . . . ." *Tanner v. Hazlehurst Mun. Separate Sch. Dist.,* 427 So. 2d 977, 978 (Miss. 1983) (quoting *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977). In another nonrenewal case decided that same year, the Mississippi Supreme Court quoted with apparent approval from a decision of the United States District Court for the Northern District of Mississippi as follows:

> In Mississippi, state law does not provide for a system of job tenure for public school teachers [citations omitted]. The defendants [Board of Education] had the lawful right not to rehire the plaintiff for any reason, or for no reason at all, upon expiration of the contract, so long as her constitutional rights were not violated.

*Jackson v. Hazlehurst Mun. Separate Sch. Dist.,* 427 So. 2d 134, 136 (Miss. 1983) (quoting *McCormick v. Attala County Bd. of Educ.,* 407 F. Supp 586 (N.D. Miss. 1976).

¶16. We note that the *McCormick* case was decided prior to the enactment of the School Employment Procedures Law and the *Jackson* case was not decided until 1983, well after the Law's adoption. This fact makes the supreme court's reliance on the quoted language of *McCormick* somewhat troubling since the Law now does, without doubt, require a school board to have an articulable reason for nonrenewal. Miss. Code Ann. § 37-9-109 (Rev. 1996). Later supreme court cases have used the phrase "demonstrable

reason" in describing the basis for the Board's decision not to rehire. *Burks v. Amite County Sch. Dist.,* 708 So. 2d 1366 (¶14) (Miss. 1998); *Harris v. Canton Separate Pub. Sch. Bd. of Educ.,* 655 So. 2d 898, 904 (Miss. 1995).

¶17. Balanced against the requirement that there be some demonstrable reason for nonrenewal, however, is the previously-quoted legislative intent that nonrenewal decisions need not necessarily be based "upon cause." Miss. Code Ann. § 37-9-101 (Rev. 1996). A number of cases deal with questions of whether the reason offered by the school board was merely a pretext for an adverse employment action based upon the teacher's exercise of some protected right. In *Tanner,* for example, the Board's stated reason was that declining student enrollment had prompted the need for a reduction in force, but Tanner claimed that the real reason for nonrenewal was because she had joined a teacher's union. *Tanner,* 427 So. 2d at 977-78. The court found that Tanner had failed to show any connection between her union membership and the nonrenewal decision. *Id*. at 979. In concluding, the *Tanner* Court noted the provision of the Law concerning the absence of a necessity for "cause" in a nonrenewal decision and said, "In other words, so long as the nonreemployment decision is not based upon an improper reason, the school board does not have to justify its decision for nonreemployment." *Id.* at 980. As in the *Jackson* case, the supreme court once again cited *McCormick v Attala County Board of Education,* calling it a "correct interpretation of Mississippi's nonreemployment of teachers statute." *Id.*

¶18. Other cases have suggested that the principal purpose of the hearing process is limited to providing a forum for the teacher to clear her name. *Calhoun County Bd. of Educ. v. Hamblin,* 360 So. 2d 1236, 1239-40 (Miss. 1978); *See also Housley v. North Panola Consol. Sch. Dist.,* 656 F. Supp. 1087, 1092 (N.D. Miss. 1987). In the *Calhoun County Board of Education* case, the supreme court considered a nonrenewal where the stated reason was a lack of communication between Hamblin, in his capacity as school principal, and his staff and the community in general. *Calhoun County Bd. of Educ.,* 360 So. 2d at 1238. The Board, after a hearing, voted not to renew the principal's contract for that reason. On appeal, the chancellor determined that there was no substantial evidence presented to establish the basis for nonrenewal. *Id.* However, the supreme court reversed the chancellor, on the basis that there had been credible evidence presented of Hamblin's alleged inability to relate to his staff and the community, so that the determination was "supported by fact." *Id.* at 1240. Before reaching that conclusion, the court said the following:

> We hold that, under the pertinent statutes applicable here, appellee had a platform in which to defend his good name, reputation, honor or integrity. In summary, the intent of the Legislature was to grant a teacher the limited right to notice and an opportunity to be heard by the School Board, e.g., to present the employee's position, *but not to place restrictions on what decision the School Board might make.*

> Considering requirements of the statute, we conclude that they express an intent to, and do, create something less than a tenured situation.

*Id.*

¶19. In the case of *Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District,* 437 So. 2d 388 (Miss. 1983), the supreme court considered a nonrenewed teacher's claim for unemployment benefits. At a previous nonrenewal hearing, the school board had made findings concerning the reason for nonrenewal that, if true, would amount to disqualifying conduct under

unemployment laws, and the issue was whether the teacher was collaterally estopped when appearing before the MESC to dispute the reasons for nonrenewal determined by the school board. *Id.* at 395. The supreme court found that the school board's findings were not conclusive on the question because they were not essential to Board's decision not to renew. *Id.* at 396. The court went on to say as follows:

> Under our law, the school administration may refuse to rehire a teacher for good reason, for bad reason, or for no reason at all. The administration simply may not base its decision not to rehire upon legally impermissible considerations. [citation omitted]. Absent a violation of some vested substantive or procedural right, a non-rehire decision is beyond judicial review.

*Id.* at 397.

¶20. We find these cases troubling when considering what relief, if any, a teacher may receive if she is able to disprove the reasons given for her nonrenewal. They seem to suggest that a judicial inquiry into whether there were facts to support the nonrenewal decision is essentially superfluous since the reviewing court is without authority to alter the Board's final decision no matter how the answer turns out. If a nonrenewal decision is unassailable on appeal except in those instances where the articulated reasons are found to serve as cover for some constitutionally impermissible reason, then, in the absence of such an allegation by the disgruntled teacher, there seems no real purpose for an appeal - or, at least, a substantially diminished purpose since the appellate court could make findings vindicating the teacher but would remain powerless to grant relief except perhaps a pronouncement purporting to restore the teacher's "good name, reputation, honor, or integrity."

¶21. One Mississippi Supreme Court case speaking to the limited purposes of the hearing process relies on the United States Supreme Court decision of *Board of Regents v. Roth*, 408 U.S. 564 (1972). *Calhoun County Bd. of Educ.,* 360 So. 2d at 1239-40**.** Roth dealt with a nontenured university teaching assistant who was not renewed after his initial one-year term. The employing university's rules provided only that a nontenured assistant such as Roth need only be informed of the nonretention decision by February 1 of the applicable year. The rules went on to provide that "no reason for non-retention need be given. No review or appeal is provided in such case." *Roth,* 408 U.S. at 567. Roth claimed a constitutional due process violation in the university's failure to inform him of the reason for the decision and an opportunity for hearing. *Id.* at 568-69. The Supreme Court found this claim to be without merit, analyzing Roth's Fourteenth Amendment claim from both a liberty standpoint and a property interest standpoint. It held that there was no deprivation of liberty since the failure to rehire left Roth free to pursue other similar employment. *Id.* at 575. The Court further held that, while Roth may have had "an abstract concern in being rehired," he did not have a property interest in a contract renewal because, based on the terms of his agreement, he did not have "a legitimate claim of entitlement to [a contract renewal]." *Id.* at 577. It was only in the course of analyzing whether Roth had a constitutionally-protected liberty interest in a contract renewal that the Court discussed a hypothetical situation where a hearing might be required. The Court said that, in the case where the stated basis for nonrenewal "might seriously damage [Roth's] standing and associations in his community," a hearing could be required because of the decision's potential adverse impact on Roth's future ability to obtain similar employment. *Id.* at 573. A footnote appended to that discussion mused that a hearing could be required on those facts, but went on to say that the purpose of such a hearing would be "to provide the person an opportunity to clear his name." *Id.* n.12.

¶22. There are evident problems in applying the rationale in *Roth* to teacher nonrenewal cases under

Mississippi law. Principal among them is the proposition that the School Employment Procedures Law makes mandatory by statutory pronouncement the two critical things that Roth unsuccessfully argued should have been afforded him under general constitutional considerations, *i.e.,* notice of the reason for nonrenewal and an opportunity for a due process hearing on the stated reasons. It is, therefore, difficult to see what further light *Roth* can shed on the matter of the proper interpretation of the School Employment Procedures Law.

¶23. It would appear that the statute itself, rather than largely inapplicable constitutional pronouncements, ought to serve as the primary source for determining the answers to three critical questions: (a) what rights Buck and Robinson had under the School Employment Procedures Law, (b) whether those rights were violated by the manner in which their nonrenewal proceedings were handled by the school board, and (c) if so, what remedy is available to Buck and Robinson.

¶24. The first step in understanding what we perceive those rights to be is to make an observation regarding two words that, at first blush, appear interchangeable but which we conclude have largely different meanings in the context of their appearance in the School Employment Procedures Law. The two words are "cause" and "reason." When those words are understood not to be interchangeable when interpreting this law, much of what would otherwise appear to be in hopeless conflict in the various sections becomes more understandable. Initially, the Law provides that decisions regarding nonrenewal need not "be based upon cause." Miss.Code Ann. § 37-9-101 (Rev. 1996). Nevertheless, the Law provides the nonrenewed teacher the right to demand "[w]ritten notice of the reasons for nonreemployment." Miss. Code Ann. § 37-9-109(a) (Rev. 1996). Then, the teacher may demand a hearing at which the employee may "present matters relevant to the reasons given for the nonreemployment decision . . . ." Miss. Code Ann. § 37-9-109(b) (Rev. 1996). Finally, the Law provides that, on appeal, the proper court can adjudicate that the school system's action was "unlawful" if the court determines that decision was "[n]ot supported by any substantial evidence," or was "[a]rbitrary or capricious." Miss. Code Ann. § 37-9-113(3)(a)-(b) (Rev. 1996).

¶25. There simply is no logical way to square this involved statutory procedure that deals at every step with vindicating a teacher's right to know the reasons for nonrenewal with the notion that a school board can decline to renew a teacher for "no reason at all." This Court concludes that, for purposes of our analysis in this case, the Law as enacted draws a distinction between (a) judicial review to assess whether the basis for nonrenewal rose to the level of "cause" and (b) the more limited concept of judicial review to assess whether the "reason" offered for nonrenewal actually existed in fact. The first proposition involves a more in-depth inquiry that begins with whether the facts supporting the stated basis for nonrenewal can be shown and ends with whether, if the facts are shown to exist, the basis can reasonably be said to constitute a matter of sufficient gravity to deny reemployment to an otherwise deserving teacher. The School Employment Procedures Law does not appear to grant a reviewing court such a broad mandate. *See* Miss. Code Ann. § 37-9-101 (Rev. 1996). The second, and more limited, inquiry begins and ends with the question of whether facts exist to substantiate the reason offered by the school system, and does not permit a further investigation into the wisdom or fundamental fairness of denying a teacher reemployment for the reason offered. That limited inquiry is certainly permitted to the Court under § 37-9-113(3).

¶26. If, upon a hearing on the matter of nonrenewal, the teacher is able to clearly establish that the reason offered by the school system is untrue, then it would seem, in the normal course of events, the school board would be led to reconsider the teacher's continued service in a different, and more favorable, light. In those

cases where, for whatever reason, the Board obstinately persists in a personnel decision based on a reason that no longer exists by any fair analysis, the Law seems to permit narrow judicial review to determine whether the Board's decision was "not supported by any substantial evidence." Miss. Code Ann. § 37-9-113(3)(a) (Rev. 1996). In the event the court so determines, the statute declares the Board's action "unlawful," and it would appear illogical to suggest that a teacher who has been subjected to unlawful treatment in the matter of her employment would be without remedy beyond a judicial fiat intended to restore the teacher's good name and reputation. Thus, in those limited circumstances, it is the view of this Court that a reviewing court may properly grant a teacher relief extending beyond a mere attempt to restore her reputation. Providing such relief on that basis would not improperly create a system of tenure in contravention of the Law and would not run afoul of the stated legislative intent that nonrenewal decisions need not be "for cause."

¶27. It is on that basis that we proceed to consider the treatment of Buck and Robinson at the hands of the Lowndes County School Board. However, as an additional prelude to such consideration, we must consider the impact of a procedural matter that involves the allocation of the burden of proof in teacher nonrenewal hearings.

¶28. In cases where a currently-employed teacher is being terminated prior to expiration of an existing contract, the Law requires that the termination be for good cause shown and places the burden on the school system to demonstrate the existence of facts to support the cause for termination. *Harris,* 655 So. 2d at 902. However, the matter is treated substantially differently in the case of a proposed nonrenewal. In matters of nonrenewal, the school board is required only to demonstrate, in advance of the hearing, that a "demonstrable reason" exists for the decision not to renew. *Calhoun County Bd. of Educ.,* 360 So. 2d at 1240. That places the burden on the teacher to "prove affirmatively and conclusively that the reasons relied upon by the School Board have no basis in fact." *Id*.

¶29. We turn now from these general considerations to the particular facts of this case. The Board, based on nothing except written communications for the Department of Education alerting the Board to "possible copying of answers or possible coaching or interference with responses" in Buck's class, determined that Buck and Robinson would not be renewed for the next school year. When called upon to articulate the reason for nonrenewal of these two teachers, the school board elected not to rely simply on this awareness of "possible copying" or "possible coaching or interference with responses" as the reason for nonrenewing these teachers. Instead, the Board elected to affirmatively charge that Buck and Robinson "assisted, coached, and interfered with responses and answers" of the student test-takers in Buck's room. As a second reason, the Board accused Buck and Robinson with criminal violations of Section 37-16-4 of the Mississippi Code, which, among other things, makes it a criminal offense to "[c]oach examinees during testing or alter or interfere with examinees' responses in any way" during the administration of mandatory uniform tests required by the Department of Education. Miss. Code Ann. § 37-16-4 (Rev. 1996). This separate reason does not appear to be based on a different set of facts. Rather, it seems to be merely an attempt to heighten the seriousness of these teachers' alleged activities set out in the first reason.

¶30. For purposes of our analysis, we will assume that the communications from the Department of Education, combined with the Board's knowledge of which teachers had general supervisory authority over testing in Buck's room, was sufficient to constitute a "demonstrable reason" not to renew Buck's and Robinson's contract. Therefore, the burden of proof fell to Buck and Robinson to prove affirmatively and conclusively that the reasons given by the school board had no basis in fact. In other words, these teachers

were charged with conclusively proving that they did not improperly coach their students or otherwise alter or interfere with the students' test responses.

¶31. In order to meet that burden, both Buck and Robinson relied upon the affidavits they had earlier given to the Department of Education and which were also introduced into the record at the nonrenewal hearing. In those affidavits, both teachers denied that they provided any improper coaching or assistance to their students during the administration of the test. Such affidavits are specifically contemplated as an acceptable form of evidence at hearings of this nature. Miss. Code Ann. § 37-9-111(2) (Rev. 1996).

¶32. This Court is satisfied that these affidavits were sufficient, in themselves, to meet these teachers' threshold burden of demonstrating the untruth of the school board's stated reasons. Though the burden of proof did not then shift to the school board to prove by a preponderance of the evidence that Buck and Robinson did, in fact, improperly assist their students, these affidavits were sufficient to shift the burden of going forward to the school board to show that there was some factual basis for the allegations of wrongdoing relied upon to deny these teachers reemployment.

¶33. We must, therefore, determine whether the school board was able to present substantial evidence to counter Buck's and Robinson's sworn denial of improper activity. If there is such substantial credible evidence in the record, then our obligation would be to affirm the action of the school board, since it is well-settled that an appellate court's duties in these situations does not extend to a re-weighing of the evidence to determine where we might think the preponderance would lie. *Harris,* 655 So. 2d at 903; *Board of Trustees of the Hattiesburg Mun. Separate Sch. Dist. v. Gates,* 461 So. 2d 730, 736 (Miss. 1984). We receive some preliminary guidance from the statute itself in determining this question, when we are instructed that hearsay evidence may be admitted at the hearing, but, "if admitted, shall not be the sole basis for the determination of facts by the board . . . ." Miss. Code Ann. § 37-9-111(5) (Rev. 1996).

¶34. At the outset, we determine that the communications from the Department of Education, containing only general descriptive statements regarding the test results and stating what conclusions the Department drew from its review of those results do not, standing alone, constitute credible evidence that Buck and Robinson improperly assisted their students during the administration of the tests. These letters may well have formed the basis for suspicions of such improper activity and properly suggested the need for further investigation to seek to determine exactly what did transpire. However, that is certainly a different proposition from saying that these letters stating that, in some unspecified instances, certain test answers from different students were essentially identical was enough to permit a reasonable inference that Buck and Robinson were actively engaged in improperly coaching and assisting the students in their charge. There simply is insufficient information in the Department's letters to permit such an inference. Therefore, we must look elsewhere for substantial evidence of these teachers' improper activities.

¶35. The only other real evidence put on at the hearing prior to its initial adjournment was Investigator Holley's testimony relating to his interviews with the children who were in the room during the testing. Holley was permitted to relate certain things that some of these students purportedly told him regarding answers being written on the board and about an unspecified teacher assisting a student in using the dictionary. The self-evident problem in placing reliance on this testimony is that it was all hearsay of the purest form, and the statute specifically forbids a decision based solely on hearsay evidence. Miss. Code Ann. § 37-9-111(5) (Rev. 1996). It is entirely unclear from the record as to why, if the evidence from these children of improper conduct by Buck and Robinson was so compelling, the Board did not call some

number of them as witnesses or obtain their testimony by way of deposition. Certainly, it may have been unpleasant and distasteful to directly involve the affected children in the hearing. Nonetheless, it is often the case that a young child is the sole source of evidence needed in a fact-finding inquiry and it is not uncommon for young children to appear as witnesses in such proceedings. That the Board would prefer not to directly enmesh these children in the hearing may be understandable, but it does nothing to increase the evidentiary worth of a hearsay report of what the children *might* be expected to say were they to be called as witnesses.

¶36. Upon the reopening of the hearing, Investigator Holley was permitted to make certain observations regarding conclusions he drew when he was permitted to make an inspection of the testing material. This inspection was apparently arranged after the evidentiary portion of the hearing had been initially closed. It was undertaken without any notification to counsel for the teachers. In fact, these teachers, as of yet, have not been offered the opportunity to inspect or examine this very critical documentary evidence on which the school board's case rests. This Court has no sympathy for the notion that an investigator working principally in the service of a school district may be permitted to view crucial evidence not available to the nonrenewed teachers and then testify as to what he claimed to have observed and what conclusions he was able to draw from his ex parte view of the evidence. In the first place, such testimony is of so little probative worth as to be essentially meaningless in the context of a hearing intended to be a legitimate inquiry into the factual basis for reasons behind a nonrenewal decision. In the second place, even if such testimony were seen as having some limited probative value, the procedure by which it was obtained and presented, without question, runs directly afoul of the provision of Section 37-9-109(c) requiring that the nonrenewed teachers "[r]eceive a fair and impartial hearing . . . ." Miss. Code Ann. § 37-9-109(c) (Rev. 1996). It is fundamentally unfair to permit one side in a dispute to view documentary evidence going to the very heart of the dispute and, in the absence of the documents themselves, offer evidence as to what the documents purportedly showed. We do not conclude that a different result is appropriate in this case merely because the testing material was subject to a Hinds County protective order against disclosure. It is, in fact, not even clear that the Hinds County order, entered for the sole purpose of preventing disclosure of the testing material pursuant to a request under this State's open records law, could have prevailed in the face of a subpoena issued for the documents under Section 37-9-111(7) to be enforced by the Lowndes County Chancery Court. Whether a document held by a public body containing private trade secrets can be obtained by anyone making the appropriate request under the open records law is a substantially different question from whether those same documents may properly be made the subject of a lawful subpoena. However, in all events, there is no disputing the fact that the records themselves, relied on by the school board to prove improper conduct by Buck and Robinson, were not offered into evidence. We find Investigator Holley's subjective impressions of what this evidence would have shown had it been produced to have essentially no probative value.

¶37. We, therefore, conclude that the decision of the school board to nonrenew Buck and Robinson for the 1996 to 1997 school year to be unlawful under the statute because the reasons articulated by the Board for the decision were not supported by substantial evidence.

¶38. The sole question, therefore, before the Court is what remedy will apply for this unlawful action by the Board. When a teacher is not given timely notification of nonrenewal, the remedy, once the affected school year has ended, has been held to be that the teacher is entitled to the salary she would have received less any sums received in alternate employment by way of mitigation. *Jones v. Benton County Bd. of Educ.*, 389 So. 2d 1381, 1382-83 (Miss. 1980). When a teacher receives a timely notification but the reasons for

giving that notice are subsequently shown to have no basis in fact, it is nonsensical to say that this teacher ought to be entitled to any lesser remedy.

¶39. Therefore, this Court is of the opinion that the judgment of the Chancery Court of Lowndes County must be reversed and this matter remanded to the Chancery Court of Lowndes County for the sole purpose of permitting an evidentiary inquiry into the proper assessment of damages to be awarded to Buck and Robinson, those damages to be calculated under the rule announced in *Jones v. Benton County Board of Education*, 389 So. 2d 1381, 1382-83. Damages to be assessed in this proceeding are to be limited solely to the school year 1996 to 1997.

¶40. **THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THE TERMS OF THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR. BRIDGES, J., DISSENTS WITHOUT WRITTEN OPINION. THOMAS, J., NOT PARTICIPATING.**