# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-00094-COA

**JACKSON PUBLIC SCHOOL DISTRICT**                                  **APPELLANT**

**v.**

**TANYATEMEIKA MASON**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2017 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JOANNE N. SHEPHERD |
| | DORIAN E. TURNER |
| | DELLWYN K. SMITH |
| ATTORNEY FOR APPELLEE: | PRESTON DAVIS RIDEOUT JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 09/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     This appeal involves the demotion of former Jim Hill High School principal Tanyatemeika Mason to the position of assistant principal. After a four-day due process hearing, the board of trustees of the Jackson Public School District (JPSD) upheld Mason's demotion. However, the Hinds County Chancery Court reversed the board's decision because the court concluded that the demotion constituted an untimely non-renewal of Mason's contract. We hold that the chancery court erred because JPSD validly terminated Mason's employment as a principal. Therefore, we reverse and render the judgment of the

chancery court and affirm the decision of JPSD's board of trustees.

## FACTS AND PROCEDURAL HISTORY

¶2.     Prior to the 2015-2016 school year, Mason was an assistant principal at Jim Hill High School. She became Jim Hill's principal for the 2015-2016 school year. However, according to JPSD, Mason demonstrated poor leadership and poor judgment and neglected her duties as principal, which adversely impacted students and the school's academic performance.

¶3.     On May 12, 2016, JPSD delivered a letter to Mason that stated as follows:

> This correspondence shall serve as confirmation that you have agreed to accept [JPSD's] offer of a position as assistant principal with no loss of salary for the 2016-17 school year as an alternative to nonrenewal of your contract as principal at Jim Hill High School. Please understand that this offer is contingent on approval by [JPSD's] board of trustees. By doing so, you voluntarily and of your own free will agree to waive any and all of your rights as provided by the Education Employment Procedures Law, Miss. Code Ann. [§] 37-9-101 et seq., including but not limited to notice of nonrenewal and a due process hearing. If you do not accept this agreement, [JPSD] will proceed with nonrenewal of your contract for the 2016-17 school year. Your signature below indicates acceptance of this agreement.
>
> If you do not accept this agreement, [JPSD] will proceed with nonrenewal of your contract for the 2016-17 year and offer you the position of assistant principal at the salary commensurate for that position. . . .

Mason countersigned the letter, indicating that she accepted the offer. However, the next day, she rescinded her acceptance and rejected the offer.

¶4.     On May 27, 2016, JPSD delivered a letter to Mason from the superintendent that stated as follows:

> Pursuant to the provisions of Miss. Code Ann. § 37-9-59, you are hereby notified that you are being demoted to assistant principal for the 2016-17 school year due to your poor leadership, poor academic success of your school,

2

poor professional judgment, and neglect of your duty as a principal. . . .[1] Because of your conduct, [JPSD] has no alternative but to demote you from principal at Jim Hill to assistant principal at another high school. Your salary for the 2016-17 school year will decrease from $72,200 to $71,450 commensurate with your new position as assistant principal.

Under the above statute, you are entitled to a public hearing on the charges made against you. You must request a hearing by delivering a letter to my office within five (5) calendar days from this date. If no written request is received, you will be demoted to assistant principal effective June 1, 2016. . . . If you request a hearing, . . . [t]he procedure for your hearing shall be prescribed in Miss. Code Ann. § 37-9-111. . . .

¶5. Mason timely requested a hearing. Prior to the hearing, JPSD provided Mason with a "Notice of the Reasons for Demotion and Summary of the Factual Basis Thereof," which alternately referred to the employment action as both a "termination" and "demotion." A four-day due process hearing was held in July 2016, and a total of seventeen witnesses testified. Following the hearing, JPSD's board of trustees voted to uphold Mason's termination/demotion. Mason then filed a notice of appeal in the chancery court from the decision of the board of trustees "approving her termination/demotion."

¶6. After briefing and oral argument, the chancery court ruled that Mason's demotion was "a non-renewal" of her contract and "was untimely and therefore void." Therefore, the court reversed the decision of the board of trustees and declared that Mason had "a valid contract as a . . . principal for the 2016-2017 school year."

¶7. Eight days after the chancery court entered its order, Mason filed a "Motion to Alter or Amend Judgment to Award Costs" in which she asked the court to "amend" the judgment to award her costs of $2,089.78. The court subsequently granted Mason's motion and

---

[1] The letter went on to discuss several specific deficiencies in Mason's performance.

3

awarded costs of $1,988.50. JPSD filed a notice of appeal thirty days later.

## JURISDICTION

¶8.     Mason argues that this Court lacks jurisdiction because JPSD's notice of appeal was untimely. We disagree. Rule 4(a) of the Mississippi Rules of Appellate Procedure provides that a notice of appeal must be filed within thirty days of the entry of the order or judgment appealed from. Rule 4(d) then provides that if a party files a timely motion to alter or amend the judgment under Mississippi Rule of Civil Procedure 59, the time for filing a notice of appeal runs from the entry of the order disposing of that motion. In this case, Mason filed a timely motion to alter or amend the judgment, which the chancery court granted. JPSD then filed its notice of appeal within thirty days of the chancery court's order granting Mason's motion. Therefore, JPSD's notice of appeal was timely under Rule 4.

¶9.     Mason argues that the Rules of Civil Procedure do not apply when, as in this case, a chancery court acts as an appellate court. Thus, she argues that her motion to alter or amend the judgment was not filed under Rule 59 and did not toll the time for taking an appeal. However, this Court recently rejected the same argument. *Wirtz v. Adams Cty. Bd. of Supervisors*, No. 2018-CP-00031-COA, 2019 WL 1615655, at *3-*4 (¶¶14-18) (Miss. Ct. App. Apr. 16, 2019) (petition for a writ of certiorari filed). In *Wirtz*, we held that a party may file a motion to alter or amend the judgment under Rule 59 in a case in which a circuit court is acting as an appellate court. *Id.* Therefore, we held that a timely motion to alter or amend the judgment tolls the time for taking an appeal in such a case. *Id.* The same reasoning applies in this case. JPSD's notice of appeal was timely because it was filed within thirty

4

days of the order granting Mason's motion to alter or amend the judgment.

## ANALYSIS

¶10.    We review the decision of JPSD's board of trustees applying the same standard of review as the chancery court. *Ekanem v. Greenville Pub. Sch. Dist. Bd. of Trs.*, 235 So. 3d 1431, 1433 (¶4) (Miss. Ct. App. 2017). Thus, in substance, this Court reviews the board's decision, not the ruling of the chancery court on appeal.

¶11.    A reviewing court must affirm a school board's decision to terminate an employee unless "the action of the school board is unlawful for the reason that it was: (a) Not supported by any substantial evidence; (b) Arbitrary or capricious; or (c) In violation of some statutory or constitutional right of the employee." Miss. Code Ann. § 37-9-113(3) (Rev. 2013). The court will not disturb a board's decision based on a "harmless error by the board in complying with [statutory] procedural requirements," but the court may remand a case to the board if the court finds "prejudicial error in the proceedings." *Id.* § 37-9-113(4). The interpretation of a statute is a question of law that this Court reviews de novo without deference to the school board. *Nissan N. Am. Inc. v. Tillman*, 273 So. 3d 710, 714 (¶11) (Miss. 2019); *King v. Miss. Military Dep't*, 245 So. 3d 404, 407-08 (¶¶8-13) (Miss. 2018); *Miss. Mfrs. Ass'n Workers' Comp. Group v. Miss. Workers' Comp. Grp. Self-Insurer Guar. Ass'n*, No. 2015-WC-01695-COA, 2019 WL 350411, at *5 (¶24) (Miss. Ct. App. Jan. 29, 2019).

¶12.    The overarching issue that JPSD raises in this appeal is whether Mason's demotion was an "untimely" and "void" non-renewal of her contract, as the chancery court held, or a

valid termination of her employment as a principal. Therefore, we begin with an overview of the different statutes and rules that apply to a termination of a principal or teacher, on one hand, and a non-renewal of the contract of a principal or teacher, on the other hand.

¶13. The superintendent of a school district may terminate the employment of a principal or teacher for good cause at any time. Miss. Code Ann. § 37-9-59 (Supp. 2018). The employee is entitled to notice of the reasons for her dismissal and may request a public hearing before the school board. *Id.* "[I]n a hearing concerning a dismissal, the burden is on the superintendent to show that a principal or teacher has been dismissed for [good cause]." *Miss. Emp't Sec. Comm'n v. Phila. Mun. Separate Sch. Dist.*, 437 So. 2d 388, 394 n.4 (Miss. 1983). If the school board upholds the dismissal, the employee has a right to judicial review in chancery court. Miss. Code Ann. § 37-9-59; Miss. Code Ann. § 37-9-113(1) (Rev. 2013). However, the chancery court's "powers of review are limited to a review of the record made before the school board to determine if the decision is unlawful because it was '(a) not supported by any substantial evidence; (b) arbitrary or capricious; or (c) in violation of some statutory or constitutional right of the [principal].'" *Phila. Mun. Separate Sch. Dist.*, 437 So. 2d at 394 n.4 (quoting Miss. Code Ann. § 37-9-113(3)).

¶14. A school district may also "non-renew" a principal's or teacher's contract for the upcoming school year. Miss. Code Ann. § 37-9-105 (Rev. 2013). However, in the case of a principal, the school district must give notice of the non-renewal on or before March 1. *Id.* § 37-9-105(a).[2] An employee whose contract is not renewed has a right to notice of the

_____

[2] A later deadline applies to teachers. Miss. Code Ann. § 37-9-105(b).

6

reasons for the non-renewal, a public hearing before the school board, and judicial review on the same (limited) grounds as an employee who is dismissed. Miss. Code Ann. § 37-9-109 (Rev. 2013); *Phila. Mun. Separate Sch. Dist.*, 437 So. 2d at 394 n.4. The "procedures" and "procedural safeguards" are "essentially the same" for either a non-renewal or a dismissal. *Phila. Mun. Separate Sch. Dist.*, 437 So. 2d at 394 n.4. However, the "substantive differences" between a non-renewal and a dismissal "are well established in our case law." *Id.* A school district is *not* required to show "good cause" for its decision not to renew an employee's contract; rather, the district need only provide a "demonstrable reason" for its decision. *Calhoun Cty. Bd. of Educ. v. Hamblin*, 360 So. 2d 1236, 1240 (Miss. 1978). The burden of proof then shifts to the employee "to prove affirmatively and conclusively that the reasons relied upon by the [school district] have no basis in fact." *Id.*

¶15. The main issue in this case is whether Mason's "demotion" was a non-renewal or a termination. The distinction is significant because JPSD did not give Mason notice of non-renewal prior to the March 1 deadline. Therefore, any attempt to non-renew her contract would have been untimely and ineffective.

¶16. There are two apparent reasons for the parties' disagreement as to whether the case involves a non-renewal or termination. The first is that JPSD's initial (May 12) letter to Mason offered her "a position as an assistant principal with no loss of salary . . . *as an alternative to nonrenewal of [her] contract as principal at Jim Hill High School.*" (Emphasis added). The letter went on to state that Mason's acceptance of the offer would operate as a waiver of her rights under applicable statutes, "including but not limited to

7

*notice of nonrenewal* and a due process hearing." (Emphasis added). As described above, Mason initially accepted JPSD's offer, but the next day she changed her mind and rejected the offer. JPSD then proceeded with Mason's demotion under Mississippi Code Annotated section 37-9-59, the statute that provides for the termination of an employee.

¶17. JPSD's initial offer to Mason was based on the erroneous premise that JPSD *could* still non-renew Mason's contract on May 12. JPSD was in error because the March 1 deadline had passed. Once that deadline had passed, Mason's contract was automatically renewed for the next school year, and JPSD could not simply non-renew her contract. *See, e.g.*, *Jackson v. Bd. of Ed. of Oktibbeha Cty.*, 349 So. 2d 550, 553 (Miss. 1977).

¶18. Although JPSD's initial letter was in error, that error was moot once Mason rejected JPSD's offer. As noted above, a court will not reverse a decision of a school board based on a "harmless error" in following statutory procedures. Miss. Code Ann. § 37-9-113(4). Because JPSD ultimately did *not* attempt to non-renew Mason's contract, the error in its initial letter to Mason is harmless.

¶19. The second source of confusion about the nature of the employment action in this case is JPSD's use of the term "demotion." Mason asserts that Mississippi Code Annotated section 37-9-59 only provides for the "dismissal" (i.e., termination) or "suspension" of a principal or teacher and does not permit a "demotion." Mason also argues that, as a matter of law, a "demotion" *is* a "non-renewal." We disagree.

¶20. To begin with, it is important to emphasize that once Mason rejected JPSD's initial offer, JPSD proceeded with the demotion under section 37-9-59, which governs terminations

8

of employment. JPSD notified Mason that she was being demoted pursuant to section 37-9-59. After Mason requested a hearing, JPSD provided her with a "Notice of the Reasons for Demotion and Summary of Factual Basis Thereof." The first sentence of that notice stated that it was being provided pursuant to section 37-9-59, and the body of the notice alternately referred to the employment action as both a "demotion" and a "termination."

¶21. Mason thereafter had a four-day due process hearing at which seventeen witnesses testified. There is no dispute that JPSD treated the hearing as a hearing under section 37-9-59. At the outset of the hearing, JPSD's attorney stated that the reference to non-renewal in its initial letter to Mason was "inadvertent." Counsel further stated:

> The district realized that the matter had to be . . . a termination of the contract and not a nonrenewal. . . . [T]he district does stand by its right to terminate, suspend or demote any certified employee under 37-9-59, and even though the statute does not say "demotion," implicit in that is the right to do a demotion; otherwise, the district would withdraw the recommendation for demotion and move for termination.

JPSD's attorney reiterated, "[I]f [Mason's] argument is that there's no authority to do a demotion, and the only two options are suspension of the principal contract and termination of the principal contract, then the district would opt to exercise its right to terminate her."

¶22. Section 37-9-59 clearly authorizes a school district to terminate a principal *at any time* for good cause. Mason asserts that the statute does not authorize a "demotion." However, as a practical and logical matter, a demotion *is* a termination of the employee's present employment coupled with an offer of employment in a different position. JPSD obviously cannot require Mason to accept a job as an assistant principal. Whether she is willing to work as an assistant principal is a separate issue that has no bearing on JPSD's authority to

terminate her employment as a principal. In other words, JPSD's willingness to continue to employ Mason as an assistant principal does not invalidate its otherwise lawful termination of her employment as a principal.

¶23. Citing *DeSoto County School Board v. Garrett*, 508 So. 2d 1091 (Miss. 1987), Mason also argues that, as a matter of law, a "demotion" *is* a non-renewal and is therefore subject to section 37-9-105's March 1 deadline. This argument is a misreading of *Garrett*.

¶24. In *Garrett*, two principals were given notice on February 28, 1985, that they would not be recommended as principals for the next school year but would be offered contracts as teachers. *Id.* at 1092. The principals were granted hearings before the school board, but they were not provided with factual bases for their non-renewals, nor were they allowed to present witnesses on their own behalf or cross-examine the witnesses against them. *Id.* at 1092-93. The school board took the position that the principals' procedural rights under the non-renewal statutes did not apply because the principals "were given an opportunity to enter a *new contract* as *teachers*." *Id.* at 1093. The board argued that "since the principals were offered some position," there was no "termination or nonreemployment." *Id.* However, the Supreme Court concluded that the school board's action in each case was "a nonrenewal of a contract, a situation for which an employee is provided certain procedural rights." *Id.* The Court also held that the principals were entitled to be reinstated because the school district violated their procedural rights under the non-renewal statutes. *Id.* at 1093-94.

¶25. In *Garrett*, the Supreme Court did not hold that a "demotion" is always—or as a matter of law—a non-renewal. Rather, the Court held that the school board's action

10

amounted to a non-renewal on the facts of that case. In *Garrett*, the school district notified the principals of their reassignments prior to the March 1 non-renewal deadline, and the principals argued that they were entitled to the procedural safeguards afforded to them under the non-renewal statutes. *Id.* at 1092-93. The Supreme Court simply held that the principals were entitled to those rights. The Court did *not* hold that a school district cannot offer new employment in a lesser position (a "demotion") in conjunction with a termination of an employee from her present position. That is what JPSD did in this case, and nothing in the *Garrett* opinion prohibits it. The school district is simply required to meet its burden of proving good cause and comply with the procedural requirements applicable to a termination. There is no dispute that JPSD did so here.[3]

---

[3] *Gelenter v. Greenville Municipal Separate School District*, 644 So. 2d 263 (Miss. 1994), cited by the dissent, is similar to *Garrett* in relevant respects. In *Gelenter*, the school district gave the principal timely notice that his contract would not be renewed. *Id.* at 264. However, after his due process hearing, the school board ruled that he should have been reassigned to the position of assistant principal rather than simply non-renewed. *Id.* The Supreme Court affirmed the school board's decision. *Id.* at 268. However, just as in *Garrett*, the Supreme Court did *not* hold that a reassignment to a lesser position is always a non-renewal—or that it cannot be incident to a termination. The reassignment was treated as a non-renewal in that case only because the school district gave timely notice of non-renewal and proceeded under the non-renewal statute. Finally, *Board of Education for Holmes County Schools v. Fisher*, 874 So. 2d 1019 (Miss. Ct. App. 2004), also cited by the dissent, does not support Mason's argument either. There, a vocational teacher was given a new contract to teach social studies during the upcoming year. *Id.* at 1020 (¶2). His daily rate of pay under the new contract was the same as under his old contract, but his annual salary was lower because his new contract required him to work eleven fewer days than his old contract. *Id.* The school district did not give timely notice of non-renewal. Instead, the district defended the reassignment on the ground that it was only a reassignment, not a demotion or a non-renewal. *Id.* at 1021-23 (¶¶7-18). This Court reversed and remanded on the ground that there remained an unresolved dispute of fact as to whether the reassignment was a demotion and a non-renewal. *Id.* Unlike the present case, the school board in *Fisher* never held a due process hearing under section 37-9-59. Nor did the school board argue that it had good cause to terminate the employee. The school board's only argument was that the

11

¶26.   Finally, Mason asserts that section 37-9-105's March 1 deadline for notice of non-renewal will be "meaningless" if her termination is upheld.  That simply is not true.  If JPSD had provided notice of non-renewal of Mason's contract prior to March 1, it would not have been required to show "good cause" for its decision.  Rather, *Mason* would have been required "to prove affirmatively and conclusively that the reasons" for JPSD's decision had "no basis in fact."  *Hamblin*, 360 So. 2d at 1240.  By waiting until after the deadline, JPSD assumed a heightened burden of proving good cause at Mason's hearing.  Thus, the deadline was hardly "meaningless" in this case.  Nor will it be meaningless in future cases.

¶27.   In summary, we hold that the decision of JPSD's board of trustees upholding Mason's termination/demotion was a valid termination of Mason's employment as a principal pursuant to section 37-9-59.  Mason does not dispute that the record contains sufficient evidence to sustain the board's decision on the merits.[4]  Therefore, we reverse and render the judgment of the chancery court and affirm the decision of the JPSD board of trustees.[5]

¶28.   **REVERSED AND RENDERED.**

---

reassignment was not a demotion at all.  For that reason, *Fisher* is also inapposite.

[4] In her brief on appeal, Mason states: "[W]ithin the strictures of the standard of review established for the court to review this fact issue, the chances are slim to nonexistent in Mason getting a reversal of the [b]oard's decision on this issue"—i.e., whether there is "substantial evidence" to support the board's decision on the merits.  At oral argument in this Court, Mason's attorney again conceded that there is substantial evidence to support the school board's decision, given our deferential standard of review.  Counsel agreed that the only issue in the case is whether JPSD's action amounted to an untimely and invalid non-renewal or a valid termination.

[5] On appeal, JPSD also challenges the chancery court's inclusion of a filing fee as part of its award of costs.  That issue is moot because we reverse and render the judgment of the chancery court in its entirety.

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, LAWRENCE AND McCARTY, JJ.**

**McDONALD, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶29.    I agree that JPSD's appeal to this Court is timely and that this Court has jurisdiction to hear it. But because the majority opinion in this case significantly impacts the rights of teachers and administrators in our public schools, I must disagree with the majority's sanction of JPSD's actions and its reversal of the chancery court's decision. While the majority and I agree on several points, I disagree with the conclusion it reaches. In my opinion, the chancery court correctly appreciated this case for what it was —a costly mistake made by JPSD in failing to act by the deadline for providing notice of non-renewal to Mason, followed by JPSD's attempt to get Mason to waive her right to timely notice of non-renewal, followed by JPSD's unilateral demotion of Mason when there was no statutory procedure for doing so. In my opinion, the chancery court correctly found that Mason was demoted from her position as high school principal and that her demotion was an unlawful and untimely non-renewal of her contract.

¶30.    At issue in this case are two Mississippi statutes found in the Education Employment Procedures Law that school districts are to follow in managing its certified staff: one requires that notice of renewal or non-renewal of the contracts be given to principals by March 1 and by April 15 for teachers.[6] Another statute allows the district to suspend or terminate an

_____

[6] Miss. Code Ann. § 37-9-105 (Rev. 2013).

13

employee for cause at any time if it learns of misconduct.[7]   However, the Education

Employment Procedures statutes do not include a definition or provision for demotions of

employees.  This requires the Court to determine whether JPSD's action was  an untimely

attempt to non-renew Mason or a termination of her contract.[8]

¶31.    Before analyzing the law, there are several pertinent facts that I would add or

emphasize.  In this case, Mason had been an assistant principal for nine years before being

promoted to principal of Jim Hill High School for the 2015-2016 school year.  As previously

mentioned, the deadline for non-renewing principals was March 1.  Mason did not receive

a non-renewal notice despite JPSD's knowledge of deficits in her job performance at that

time.

¶32.    Near the end of the school year, on May 12, 2016, Mason received a letter from

JPSD's legal counsel stating that if she did not voluntarily accept a demotion she would be

"non-renewed" as principal of Jim Hill High School for the 2016-2017 school year.  The

letter stated that if Mason agreed to the demotion, she would also be agreeing to waive her

rights to timely notice of non-renewal established by Mississippi Code Annotated section 37-

9-101, et seq. (Rev. 2013).[9]   Thus, it was clear that JPSD recognized that it had missed a

critical deadline, and that by missing that deadline JPSD had violated Mason's right to timely

---

[7] Miss. Code Ann. § 37-9-59 (Rev. 2013).

[8] It would greatly benefit all parties in the future if the legislature would address this gap in the statute and include a provision for demotions.  Until that time, we are forced to characterize the employment decision we are presented and apply the appropriate law.

[9] This statute outlines the legislative intent for the non-renewal statutes.

14

notice. To get around this, JPSD asked Mason to waive that right.

¶33. When Mason did not agree to the demotion, JPSD moved ahead to unilaterally demote (not terminate) her. On May 27, 2016, Mason received a second letter from the superintendent stating that she would be *demoted* to an assistant principal at another high school and referencing Mississippi Code Annotated section 37-9-59 (Rev. 2013) (the termination procedure statute[10]). The letter also stated that she was "entitled to a public hearing on the charges made against [her]," but said nothing about termination. Mason timely requested a hearing.

¶34. Thereafter, until the date of the hearing, JPSD took the position it was *demoting* Mason, not terminating her. In a letter dated June 28, 2016, JPSD informed Mason's attorney of the dates for the due process hearing with the subject line "Re: *Demotion* Due Process Hearing for Ms. Tanya Mason." (Emphasis added). In a letter dated July 27, 2016, one day prior to the scheduled hearing, JPSD sent Mason a "notice of the reasons for *demotion*." (Emphasis added). The subject line in that letter read "Re: *Deomotion* [sic] of Ms. Tanyatemeika Mason." (Emphasis added; capitalization omitted). The letter contained eight additional references to "demotion"[11] and only three references to the word

---

[10] This statute outlines a superintendent's ability to suspend or terminate the district's employees for "incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause" at any time Miss. Code Ann. § 37-9-59.

[11] The heading reads "RE: *DEOMOTION* [sic] OF MS. TANYATEMEIKA MASON." (Emphasis added). Elsewhere in the body is found: "Notice of Reasons for *Demotion*"; "A letter dated May 27, 2016, informed you of your *demotion* and the reasons for that action."; "You have been *demoted for the following* reasons . . ."; " . . . the District informed you that you would be *demoted* . . ."; "Consequently, the District *demoted* you . . ."; "the Superintendent is recommending that you be *demoted* from your position . . .";

15

"termination."

¶35.    There was still confusion during the hearing, held on several days in July and August 2016, as to whether Mason was being demoted or terminated.  At the start of her hearing Mason moved that the board renew her contract because she contended that the demotion was an untimely non-renewal.[12]    JPSD responded that although the May 12 letter "inadvertently" stated that Mason was non-renewed, she was in fact terminated.  However, the district then backed off of that position.  As a follow-up, the hearing officer asked, "[s]o, we're moving forward on demotion, [is] basically what I'm hearing?"  JPSD's counsel stated "Yes."  Thereafter, throughout the due process hearing, JPSD's counsel as well as other witnesses referred to JPSD's action as a "demotion."  Mason's supervisor and the chief academic officer, Freddrick Murray, even recommended that Mason be "demoted as opposed to terminated."  Further, JPSD's counsel asked Murray, "[w]hy did you not recommend the termination of Ms. Mason as opposed to a demotion to assistant principal?"   Murray expressed how the district valued Mason but stated that she was not right for the principal position at Jim Hill High School at that time.

¶36.    Despite JPSD's references during the hearing to the action being appealed as Mason's

_____

"the documents that support the reasons for your *demotion* are attached . . ."; and finally *demotion* is referenced in the certificate of service.  (Emphasis added).  This raises the specter of whether there is a due process violation in light of the ambiguity of the notice.

[12] Section 37-9-105 (a) provides that if a recommendation is made by the school district not to offer an employee a renewal contract for a successive year, written notice of the proposed nonreemployment stating the reasons for the proposed nonreemployment shall be given no later than the following:  " If the employee is a principal, the superintendent, without further board action, shall give notice of nonreemployment *on or before March 1. . . .*"  (Emphasis added).

demotion, on December 7, 2016, Mason received an email notifying her that the school board voted to uphold her "termination."

¶37.   Mason appealed that "termination," and the chancery court reversed.  Ultimately the chancery court also granted Mason's motion to alter or amend the judgment to award costs, including the $148 filing fee.

¶38.   Moving on to the discussion of the law, I agree with the majority that the standard of our review of the chancery court's decision is the same standard of review that the chancery court is bound to follow.  *Giles v. Shaw Sch. Dist.*, 203 So. 3d 1165, 1169 (¶12) (Miss. Ct. App. 2016).  This is set out in Mississippi Code Annotated section 37-9-113(3), which provides:

> The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was: (a) [n]ot supported by any substantial evidence; (b) [a]rbitrary or capricious; or (c) [i]n violation of some statutory or constitutional right of the employee.

¶39.   Here, the chancery court found that Mason's "demotion" was in fact a non-renewal subject to the statutory deadlines of notice.  If the chancery court is correct in its characterization of events, then even the majority would have to agree that Mason's statutory right to notice had been violated.  The majority says that "any attempt to non-renew her contract [after that date] would have been untimely and ineffective."  Ante at (¶15).  It also acknowledges that "[o]nce that deadline had passed, Mason's contract was automatically renewed for the next school year, and JPSD could not simply non-renew her contract."  Ante at (¶17).

17

¶40. The record is clear that JPSD wanted to demote Mason and the chancery court found this to be the case. To reverse the chancery court's decision; however, the majority has to find that the district was really terminating her. To do this the majority discounts the clear reading of the May 12 and May 27 letters Mason received, which indicated that the district was demoting her in lieu of the non-renewal of her principal contract. The May 12 letter clearly shows that JPSD recognized that if it wanted to demote Mason, it knew it should have done so by the March 1 deadline—i.e., Mason was offered a demotion in exchange for a waiver of her non-renewal rights. The majority says the letter was just based on JPSD's "erroneous premise" that it could still non-renew Mason's contract on May 12. Ante at (¶17). But there is no proof in the record to support this finding. It is inexplicable to me that one of the largest school districts in the state, employing hundreds of certified personnel with whom it contracts each year, could have such an erroneous premise. I cannot assume incompetence on the part of the district; perhaps Mason's untimely non-renewal fell through the cracks. The majority also finds the May 12 letter to be moot because Mason rejected the offer and it finds the incorrect statement that JPSD could renew Mason's contract beyond March 1 was "harmless error"; however it is still evidence of the district's intent, motive, and knowledge.

¶41. The majority ignores the other proof in the record that JPSD was intending to demote and not terminate Mason, including the May 27 letter that referred only to Mason's demotion with no mention of termination. There is also the June 28, 2016 letter to Mason's attorney concerning the dates for the due process hearing with the subject line "Re: Demotion Due

18

Process Hearing for Ms. Tanya Mason." In addition, there is the July 27, 2016 letter, one day prior to the scheduled hearing, that JPSD sent Mason a "notice of the reasons for demotion." The subject line in that letter read "Re: Deomotion [sic]of Ms. Tanyatemeika Mason" and included eight other references to her being demoted, with the word termination being used only three times. To characterize what JPSD desired and intended to do in this case as a simple termination for cause ignores this important proof in the record, which is significant and not "harmless error" by the district.

¶42. In light of the overwhelming proof in the record that JPSD violated Mason's right to timely notice of her non-renewal, and that JPSD later decided to demote her, the majority defaults to saying that "as a practical and logical matter, a demotion is a termination of the employee's present employment coupled with an offer of employment in a different position." Ante at (¶22). But it cites no authority for this definition. There is precedent, however, for holding that a principal's demotion was a non-renewal. In *Desoto County School Board v. Garrett*, 508 So. 2d 1091 (Miss. 1987), when faced with the demotions of two school principals, the Supreme Court found the demotions to be non-renewals of their contracts with corresponding due process rights. In *Gelenter v. Greenville Municipal Separate School District*, 644 So. 2d 263 (Miss. 1994), the school board again followed the non-renewal statute and gave Gelenter notice in February that his contract would not be renewed as a principal but rather as an assistant principal. The case deals with the remedies available to the hearing officer. *Id*. at 265. However, there was no dispute that Gelenter had been demoted and was entitled to notice of that demotion, which the district gave him at the

19

statutorily prescribed time for notice of non-renewals. *Id*. at 268.

¶43. The majority indicates that the Supreme Court ruled these demotions were non-renewals because the principals were demoted by the statutory deadline for non-renewals. However, this Court has indicated that determining whether an action is a demotion would resolve the question of whether an employee was untimely non-renewed. In *Board of Education for Holmes County Schools v. Fisher*, 874 So. 2d 1019, 1023 (¶18) (Miss. Ct. App. 2004), after the renewal notice deadline had passed, a vocational education teacher was issued a contract for a different position that would ultimately pay him less. *Id*. at 1021 (¶2). Fisher argued this was a demotion and therefore a non-renewal for which he was entitled to notice by the statutory deadline. *Id.* at (¶3). We held that whether an action constitutes a demotion is a question of fact. *Id.* at 1023 (¶18). We remanded the case, which had been dismissed at summary judgment, so the court could resolve whether this was a bona fide demotion "[w]ithin the fact-specific parameters established by *Garrett*"—the implication being that a demotion would be a non-renewal for which Fisher was entitled to timely notice. *Id*.

¶44. As previously stated, school district employees have a right to notice of non-renewal by set statutory deadlines. For principals, this comes seven months into the school year. By that time, the district should know whether or not it wants to renew or non-renew that principal's contract or offer some other contract. Here, JPSD knew of Mason's alleged poor performance prior to the non-renewal deadline. JPSD could have and should have acted earlier to non-renew Mason and demote her at that time.

20

¶45. I agree with the majority that even if Mason's contract was automatically renewed, JPSD still had the right under section 37-9-59 to later terminate her contract if it discovered justification for doing so. But this is not what occurred in this case. First, JPSD indicated throughout the preliminary notices and even into the hearing its action was a demotion, not a termination. When the hearing officer asked for clarification of JPSD's intentions, JPSD confirmed that it was moving forward with a "demotion." JPSD took the position that it was merely demoting Mason because it considered her a valued employee. Second, this is not a case where, after the non-renewal deadline, the school district discovered new evidence and decided to terminate the employee. *See Hester v. Lowndes Cty. Sch. Dist.*, 137 So. 3d 325 (Miss. Ct. App. 2013) (upholding termination of a teacher after renewal of the teacher's contract because the district did not learn of teacher's unauthorized purchase until after the contract was entered); *Simpson v. Holmes Cty. Bd. of Educ.*, 2 So. 3d 799 (Miss. Ct. App. 2009) (upholding termination of principal for cause after renewal of contract when the superintendent later learned of events warranting termination). Here, JPSD knew of Mason's alleged poor performance prior to the non-renewal deadline. JPSD could have acted earlier to non-renew Mason and demote her or simply terminated her then. But it did not.

¶46. The majority's decision today renders the statutory right of teachers and administrators to timely notice of non-renewal meaningless. The importance of this right has been noted by our Supreme Court. In *Noxubee County School Board v. Cannon*, 485 So. 2d 302, 304-05 (Miss. 1986), the Supreme Court held that "strict compliance with the notice provisions of the act . . . is mandatory, and failure of the school board to abide by the dictates of the statute

21

results in an automatic renewal of the teaching contract for the ensuing year." It has also explained why this right is so important, saying:

> As a general rule, this Court has insisted on mandatory compliance with the notice provisions of the School Employment Procedures Act, Miss. Code Ann. § 37–9–101 (1972). . . . Procedural requirements of timely notice and hearing must be met in order to deny reemployment. *The intent of the legislature in enacting the School Employment Procedures Act of 1977 was to grant a teacher the limited right to notice and an opportunity to be heard by the school board but not to place restrictions on what decision the school board might make. The main purpose of the Act is to provide employees with notice that they will not be reemployed in sufficient time to enable them to secure alternative employment.*

*Ford v. Holly Springs Sch. Dist.*, 665 So. 2d 840, 843 (Miss. 1995) (emphasis added; internal citations and quotation marks omitted). Accordingly, a school district cannot ignore these deadlines and later in the spring or summer make a decision that adversely affects an employee's very livelihood. Moreover, the majority fails to appreciate the importance of this right and that it is unique and separate from the due process rights employees have. Saying that the district assumes a greater burden of proof in the subsequent termination hearing gives little solace to a teacher or administrator facing the uncertainty of winning a due process hearing in midsummer or being unemployed the next school year. An educator's timely notice of non-renewal is an important statutory right, and school districts should not be given carte blanche to ignore it.

**WESTBROOKS, LAWRENCE AND McCARTY, JJ., JOIN THIS OPINION.**